Versus Abbott Laboratory Laboratories causing the 5-10-96 parties are ready to proceed and thank you your honor may it please the court this is not a typical forum case this is a case that was ordered to proceed in a jurisdiction that is not the home jurisdiction for either the plaintiff or for Abbott and the plaintiff's filings are clear she does not allege any interactions with Abbott here and she has not identified any specific witnesses or evidence relevant to her claims here instead her position on forum is that her choice may not be disturbed because and I'm quoting from page 7 of her brief this is a case in which quote at most no single county enjoys a predominant connection to this litigation. What's the venue? I mean I know that you all haven't conceded venue but what is the plaintiff's argument that venue is proper in St. Clair County? I believe her argument but certainly Mr. Keller can address this is that because Abbott does business in the jurisdiction under the venue statute that is sufficient for venue but as this court has noted many times the forum inquiry is separate and apart from whether venue is proper and where we disagree with the plaintiff is that we think there is a county in Illinois that has a predominant connection to this litigation that county is Lake County. You're not contesting venue? That's not an issue before the court I don't believe we ever conceded it but it is not the issue the issue before the court is forum. If this case can proceed in Illinois at all we believe the proper county is Lake County that is where Abbott is headquartered it is where plaintiff herself alleges that the scheme she claims was originated and disseminated in the state and it is where plaintiff admits there are millions of pages of relevant documents. Which you moved from St. Clair County? Actually we don't concede that Justice. There were documents in and we addressed this in the reply brief there were documents associated with the government investigation in St. Clair but upon conclusion of the government investigation it is typical for the government once a settlement has been executed to return private party documents to that party's custody. So there is no record evidence and plaintiff has cited none that Abbott in any way moved or otherwise manipulated evidence in this forum nor has she drawn any specific connection between evidence here and her claims which is what the law requires. I think that is really the issue before the court the forum choice here boils down to a choice between a county where the plaintiff does not reside and has not alleged any specific connections to her case and a county where Abbott is headquartered and there are several undisputed and predominant connections to the case. What about transfer to Jackson County? Which is the plaintiff's county of residence? Does Lake County have any better place for a transfer than Jackson? Undeniably your honor I would submit for several reasons and again these are undisputed on the record. The first is obviously that Abbott headquarters is where there are millions of pages and this is undisputed of relevant documents in the case. It is also where plaintiff again herself alleges that the scheme she claims was originated and disseminated by Abbott personnel. So this is her locus of injury or the situs as it were she has placed in Lake County. And further Abbott has put in unrefuted proof by way of an affidavit attesting that for the convenience factors which is the grovelment of the forum inquiry under this court's precedence the convenience factors favor Lake County as the proper jurisdiction. And I think the precedence are clear where you have an Illinois citizen as a defendant, an Illinois company that has a predominant presence in a particular county. And that county has an undisputed connection with a particular litigation. Transfer is indeed appropriate and the only reason the trial court did not grant it was based on this mirage of the government investigation. And I say mirage because I think at a distance it may look as though it provides a sufficient connection between St. Clair County and the plaintiff's case. But on closer examination it does not. The investigation the court is aware from the brief started about 13 years ago in 1998. The then U.S. attorney Miriam McGon started looking at all of the players in the enteral feeding products industry and swept everybody up into a net. In Abbott's case the investigation resulted in a settlement on a single count of obstruction of a federal investigation that is not claimed here. And the broader analogy the plaintiff attempts to draw between the subject of the government investigation and what's at issue in this ICFA case does not bear out for a critical reason. The government investigation involved only Abbott's interactions with an imaginary government medical supplier. It did not involve any actual Medicare claims nor did it involve any actual Medicare patients. This case is very different. The plaintiff must focus on precisely those things in order to proceed with an ICFA claim. Abbott did pay a $600 million fine. Correct, your honor. It's a little hard to characterize it as a single count, no real claims. They must have thought there was something there. It's unclear, your honor, and that's why I said at a distance it may look like there's a sufficient nexus. But I think the forum precedents are clear. This court has said it, the Supreme Court has said it. The plaintiff must with specificity connect the forum with the claims at issue in her case. The case in front of this court is an ICFA case, a fraud case under the Illinois statute. What she has to prove in the elements is that Abbott somehow caused the submission of actual Medicare claims that in turn proximately caused economic harm to the specific plaintiff here and to other individual Medicare beneficiaries. I want to stress the government investigation, and I'm not minimizing the significance of the fine or the investigation. That was my point. But it did not involve those issues. It involved Abbott's interactions with an imaginary government medical supplier. Are you mixing the factors to be looked at in resolving a forum question with the factors to be resolved in certification of a class? No, your honor, I don't believe so. That's why the only place that the class certification issue enters here, and I think it's an undisputed one, is that when this court considers the forum factors, which is what we want to focus on, the court cannot look beyond the named plaintiff's case because the class has not yet been certified. So in consulting the forum factors, which is what we want to focus on, we have to look to whether this named plaintiff, who does not reside here, claimed no injury here, we have to look at whether she has connected this forum with the elements in her case, which is an ICFA case where she has to show Abbott's conduct resulted in somebody submitting actual Medicare claims that approximately caused economic harm to her. We press this point in our opening brief. She has not come up in the proceedings below or in her papers before this court with any specificity or any connection between anything that happened in St. Clair, including the government investigation, and those aspects of her case. And that is very much important for the forum determination because that's part one. It's what kind of connection has the plaintiff established between her chosen forum and her case? The second part is, has the defendant met its burden of showing that there is a more convenient predominant forum within the state of Illinois? Your brief focuses on the second paragraph of the trial court's order. The first paragraph indicates the trial court's determination that you had not met that burden. Correct, Your Honor, but the only ground that the order gives, in other words, it says defendant has not met its burden. Why? For the reason that there is no connection between those two paragraphs. The first one says you have not met the burden required of a defendant that wants to shift forum. And the second notes the existence of this unusual factor of this federal investigation and its resolution. You don't argue with the cases cited by the appellees that the trial court is not required to give the basis of its conclusions, spell them out, specificity of findings, that that burden has not been met, do you? No, Your Honor, but I would note one thing. All of the cases they cite in their brief predate the Supreme Court's 2002 decision in Green where the Supreme Court said. That's not the question I asked. Those cases that you're talking about delineated the factors that have to be met.  But it still doesn't, they do not say, they encourage, but they do not say that the circuit court has to delineate its specific findings. No, but Your Honor, that's why I said I agree that the circuit court need not, what the Supreme Court said in Green, which post-states the cases that the appellees cite, is that they do so at their peril. In other words, if a circuit court does not, because what the Supreme Court said in Green is, we do not think it is a useful way of appellate resources to have to try to guess what the trial court relied upon in looking at and reviewing these records. And so the Supreme Court said we urge our trial courts to be more careful in analyzing the foreign factors and, quote, create a better record of their analysis. Now, they need not, but where they do not, certainly I don't think it's appropriate to assume that they consider factors. And more importantly here, we don't need to assume because the trial court was very clear that whatever else it may have considered, the thing it found critical and important was the fact of this prior government investigation. And when you look at that up close, under the cases, and that's all we're asking is under the subtle cases that say it has the plaintiff connected the forum with specificity to her claims in her case, it doesn't hold up, it doesn't withstand scrutiny. And the other part is even where a trial court has considered all the factors, this court's precedents are quite clear that the court can and should reverse where either the trial court's determination does not reflect application of all principles of law or where the decision simply does not map to the facts on the record before the court. And we would submit that both of those circumstances are present here. So whether you look at it as the trial court perhaps committing an error of law by inappropriately relying on one factor and not considering the other. What evidence in the record regarding the public factors? Is there between the congestion in Lake County and St. Clair County? I think, and we did put in an affidavit which the plaintiffs have not rebutted on the convenience factors and some of the public factors. Just generally or did you list numbers of cases and link the time for jury dockets and what have you there? I will certainly check the record and we'll address that in a rebuttal. I do believe that the congestion factors. The opposing counsel seems to say that that was in the record. Yes, it is in the record and we addressed all of the forum factors because that is the focus of the inquiry. Was there a significant difference in the public factors and the congestion between the two court systems? I believe that, again I'll verify this in the record, I believe that the congestion factor favored Lake County and that that was in connection with a number of other factors because again what the cases say about the public factors is it really boils down to does it make sense to burden one jurisdiction or another with litigation? Where is the controversy localized? Where is the situs of the injury? Where are the documents? And particularly where the defendant is an Illinois citizen. How much are you burdening or disrupting the business? And that is another significant factor that I think the courts have credited in considering whether a defendant is foreign or an Illinois citizen and whether they have a predominant presence in the state that is connected to the litigation. And I think that this is an important point in this case because all we're asking for is the application of settled forum principles to the facts here when they're scrutinized not at the level perhaps 35,000 feet where there looks like a significant connection but when you get down to what's in the pleadings, what's in the record, what the government investigation is really about, it doesn't stack up and I think the plaintiffs cite the Langdon Horse case for example from the Supreme Court. That was a railroad case. It was a single plaintiff, single defendant accident case. But that's the case in which the court said and this court has acknowledged the principle don't shift the focus of forum inquiry to where the cause of action allegedly arose. The focus, and I know Justice Goldberg's dissent in the Lombardi case that we cited obviously. I did indeed. You did. But I know that dissent because he took issue with the majority for departing from the settled standard that governs forum nonconvenience, namely shifting away from where does it make sense to maintain the litigation. And similarly in the Langdon Horse case I would point out, you know, it was a railroad crossing case. The defendant there, the railroad, was trying to get out of the plaintiff's county of suit on the theory that the accident or the cause of injury arose in another county. And the court said admittedly it may be relevant in certain circumstances where the cause of action arose but that should not outweigh where the accident investigator is located, where the documents are located, where it makes sense to maintain the litigation. In this case, I would submit this is, you know, in this case, the plaintiff saying the cause of action allegedly arose in St. Clair. It did not because her cause of action is quite different. But more importantly, so if you, you know, all that score, even if you look at status of injury, it's not here, it's in Lake County. But more importantly, I would submit if you allow this case to remain here, it's almost like setting a precedent. You're departing from the settled forum inquiry and setting a precedent that could, for example, hand that defendant, the railroad, looking to get out of a forum based on the fact that it's not the convenience factors, a ticket. I think the law has never done that. Let me go back to something that was alluded to, I think, by Justice Boehner. I believe this, and correct me if I'm wrong, but I think the briefs indicated that the jury's been waived in this case. We did address that, Your Honor. I mean, we requested, I think, a jury initially. I don't know if it's been waived on the state of the court record. Pardon? I believe that the unjust enrichment account still has a jury request and the equity account, of course, is a non-jury account. That's a non-jury account. But we addressed this in the balance of the public factors. The forum inquiry, in considering where does it make sense  to burden with the litigation, does not turn solely upon, or even principally upon, a jury demand. Because this sort of litigation, obviously... Well, the reason I brought it up is that the statistics that you rely on deal with relative congestion of counties in major civil jury cases, not in bench trials. Right, but congestion is only one factor. And, again, this entire forum... No, I realize that in the circuit court, and we are required to consider all the factors. I just wanted to point that out. Of course, Your Honor, and, again, I'll certainly be happy to address on rebuttal with better specificity how that may break. I think, though this is a case where the forum factors are clearly on balance, favor Lake County for the simple reason that, again, the choice boils down to this. St. Clair County is a county where plaintiffs can see that there is no predominant connection, and she has not, under this court's precedence or the Supreme Court's precedence, done what the law says you have to do. Connect your forum choice with specificity to the elements, and this court's words, primary factual issues in her case. On the other hand is a forum where you have the defendant, an Illinois company that has a predominant presence, and the plaintiff concedes is the seat of the scheme she alleges in Illinois and where there are millions of pages of relevant documents and, according to plaintiffs, witnesses. And we put in unrefuted proof on the convenience factors by way of affidavit that has not been rebutted. So under the cases, I think the answer is clear. And the only thing that the plaintiff goes to in her papers before this court, and it's striking, is that there are documents in Ohio. And again, I think she does that to try to make the point that there is no county within the state of Illinois that has a predominant connection. I would submit first that because this is an ICFA case, and this is under the Supreme Court's decision in Gridley and also Justice Spomer's opinion for this court in the Home Depot case in 2007, where you have an ICFA case, the plaintiff has to show that there is a fraud or an alleged fraud that occurred primarily and substantially in the state of Illinois. And the only allegation she has made on this score and the only way that she can maintain this ICFA case in Illinois is if there is a county where that meets the allegation. And her only allegation on that is that Lake County Abbott Headquarters is the origin and source of dissemination of this fraudulent scheme and serves as the entire basis for her case. And so, you know, we think the plaintiff should stand by her pleading, and she has. And under the clear law of this jurisdiction in the Supreme Court's cases, the forum inquiry resolved in favor of transfer. If the court has no further questions, I would ask to reserve the balance of my time. Thank you. Keller? Good morning, Your Honors. Ms. Pepez. May it please the court, my name is Tim Keller, and I had the pleasure of representing Ms. Rapp until she passed away, and we currently are representing the estate of Ms. Rapp.  The Governor's report, as I understand it, is a report on the state of Illinois and a government investigation that the opposing counsel touched on but didn't really go into detail. As she indicated, in 1998, the U.S. Attorney's Office for the Southern District of Illinois instituted an investigation, a nationwide investigation, into internal nutritional products, their marketing, and the resulting billing that was occurring to Medicare and being reimbursed. And internal nutrition is what we a lot of times refer to as stomach pumps. It's people that, for one reason or another, their stomach or gastric processes are not working. So there's three components. You have the pump, you have the plastics that put the nutritional products, the food, which is the third product, into the patient. All three of those items, in the correct circumstances, are reimbursable by Medicare. The circumstances that were present in this case, which were admitted to in the stipulation of facts that are attached to plaintiff's complaint and amended complaint, those items are not reimbursable. And what the government identified in its investigation was that defendant was bundling the pumps with the plastics, not charging, and then yet instructing durable medical equipment suppliers on how to go about fraudulently billing Medicare for those items. The other thing that defendant admits in the stipulation of facts is that they were paying what they styled as conversion bonuses, sign-up bonuses, to DME suppliers to get them to agree to purchase a certain amount of these items exclusively from Abbott or its wholly-owned subsidiary, Ross Manufacturing. To get to the bottom of that, the U.S. Attorney's Office set up an illusory DME supplier known as Southern Medical Distributors, and that was set up in Swansea, Illinois. The government then invited representatives of several different internal manufacturers to come visit, let them know what they had available. And the Ross representatives took up that invitation, went to Swansea, Illinois, met with the undercover investigators, and explained to them how to go about billing Medicare fraudulently to maximize their recovery. The investigators went back and questioned and asked, well, what if we get hit by a Medicare audit? They said, we've got the answer to that. And they gave them a letter dated April 12th that falsely indicated that Southern Medical Distributors had actually paid for the pumps or that there was a portion of the cost attributable to the pumps. Now, how do we know all this? Again, it's from the stipulation of facts. It is attached to the complaint as well as the settlement agreement. That investigation, then, oh, the other thing, on the reimbursement of Medicare reimbursement, these products are covered under Part B, the supplementary insurance under Medicare, which is a program that people can sign up for. They pay monthly premiums once they're eligible. And there's also a co-pay requirement. There's a 20% co-pay requirement. So these products, when they were billed to Medicare, the beneficiaries, such as Mrs. Graff, have out-of-pocket costs. Following the investigation, there were criminal charges that were filed in the Southern District of Illinois, filed in East St. Louis. Judge Murphy presided over that action. And that is where the plea to obstruction of a criminal investigation of health care offense went down, and that was accepted by the court on July 23, 2003. Now, the other thing that happened, which is supported by the stipulation of facts and the settlement agreement, there was a settlement of a federal false claims action that was never actually filed, to my knowledge. But the government went to the defendant and said, here's what we have. And the settlement agreement references that is the basis for the settlement. What the government was trying to recoup in the settlement of that were the improper reimbursements that had been made by Medicare nationwide. And that alone was either 320 or 382 million. It's in the settlement agreement. Then there was an additional payment of about 17, 18 million to the states to reimburse them for Medicaid fraud that they had suffered from. So the investigation went far beyond just a criminal plea to an obstruction of a criminal investigation. The majority of the settlement monies that were paid was to reimburse the Medicare program and the state Medicaid programs for the monies that they had lost. Now, the one thing that action did not do was recoup the funds that persons such as Mrs. Rapp had paid to these DME suppliers that the defendant had taught how to submit fraudulent claims to Medicare. And that's the basis for this action. Again, the U.S., we had the southern medical distributors were located in Swansea. We had the U.S. Attorney's Office in Prairie View Heights. We had the federal court in East St. Louis. Also, just to clarify, after completion of the federal investigation, it's our understanding that the millions of documents referenced by the defendant in his pleadings and referenced by opposing counsel were located in a warehouse in Swansea, Illinois. They were there at the time this action was filed and they were there for a certain amount of time thereafter. At some point, Abbott made the decision to move the documents to another warehouse in Cook County. And I'll tie that up shortly. The other thing I want to address is the procedure. There have been substantial rulings by the lower court in this matter. This case was originally filed in January of 2004. Both the previous trial court judge... Before you get into that, what part of this is jury? What part is non-jury? It's my belief, Your Honor, that we have withdrawn the jury demand as well as the unjust enrichment. If that's not correct, we made a mistake. It was our intent to withdraw both jury demands. And I don't have that information here before me. We'll have the record. Justice O'Malley, who retired last year from St. Clair County, made substantial rulings. And this one case is substantially different than all the other cases cited by both parties. Number one, because of the age of the case. Number two, because of the substantive merit rulings that have been made at this point. Since there were substantive rulings both before the court denied the transfer motion as well as after the court denied that motion, which was January 28th of 2010. Since that time, the court has heard from the parties on the entry of a protective order that was contested, a motion to compel discovery deposition, a motion to quash the deposition that we eventually were able to take of the corporate opponent of Abbott, which is a supplement that we included. And it appears that this motion was, and the really substantive ruling that Justice O'Malley did, was giving us access above the privileged claims of the defendant to documents that they claim to be privileged pursuant to Section 408 that they were in settlement and compromise documents. It's only after that that this form transfer motion is raised for the second time. We believe that's evidence that the form shopping that's occurring here is from the defendant, not the plaintiff. I realize this hasn't been certified yet as a class, but are there any prospective members of the class in St. Clair County? Your Honor, I would suspect so, but I cannot answer that because we do not have that discovery yet on the class certification issue. Would simplify matters a little bit, I think, would it not? I'm sorry? Would simplify matters maybe a little bit, possibly strengthen your case a little bit? I don't quite understand. Is this the second form nonconvenience motion? It is, Your Honor, but I think the defense counsel will agree there was a certain amount of confusion. We I think our agreement of motion was submitted earlier, it was brief, but we couldn't find where the order either granting or denying was ever entered. I believe it was argued the motion was a timely model, it was never taken up by the court due to the discovery of the motion. So there was not a was everybody agreed there wasn't a ruling? There was no earlier ruling. The only order on a form nonconvenience motion is the one that's on appeal here today. The only written order on a form nonconvenience motion is the one that's on appeal today. So the court plaintiffs believed that the court had orally denied the motion, but there wasn't a transcript, so that's where we are. Now as far as the arguments itself, and the analysis of this issue, we're all in agreement on what the law is. There's three public interest factors, there's three private interest factors, and as this honorable court knows, what Justice O'Malley seized upon was the existence of the federal investigation, the subsequent plea, the criminal plea, the settlement documents. And when you consider in totality what was involved in that, it answers, I believe, four of the six factors. First of all, decide controversies locally. I would like to point out that in answer to paragraph eight of the  investigation, there was substantial business in St. Clair County. The situs of the federal investigation was in St. Clair County, which forms the basis of this action. As far as unfairness of imposing trial court expenses, we've already been down that road. The people of St. Clair County have been intimately involved with the government investigation, the subsequent settlement, and as you pointed out, Justice Goldman-Hirsch, we're not asking for jury trial. So that greatly diminishes the cost and the imposition on the trial court. Now, as far as congested court docket, I'll help the defendant out. That information is contained in an affidavit that was filed as a supplement along with their brief. And depending on whether you look at the actual court records, the supreme court said in Dottie, that factor is relatively insignificant in the whole scheme of things. Also, in light of the age of this case at this point, I think that also decreases the significance of that factor. As to private interest factors, we've heard a lot from the defendant about their convenience. But what the law is, is the convenience to all parties. It's not just the convenience to the defendant. They also mistakenly came up that we don't contest that issue, which we most certainly do. I mean, my office is in Marion, Mr. Sprague's is in Belleville. The administrator, which is Ms. Rath's son, resides in Jackson County. It's going to be much more convenient for him to proceed with this trial in St. Clair County than it would in Lake County. Ease of access to testimonial and documentary evidence. Let me stop you for just a minute and clarify, I want to clarify my understanding of your argument. You don't contest that the scheme was basically put together in Lake County. You're claiming it was executed to the detriment of this putative class in St. Clair County and therefore St. Clair County is appropriate considering that factor of four. Is that correct? I just want to make sure I understood your question. We have not had the allegation of the complaint that the fraudulent scheme was developed at Abbott's corporate headquarters which is in Lake County. To be honest, though, the deposition, the corporate deponent deposition raises questions as to whether that's accurate. We have not had the, as you know, the discovery stay has been in place since the Supreme Court issued its supervisory order. We have not been able to follow up at this point. But the one thing we do get from the corporate deponent is there are numerous witnesses, material witnesses, that are located in Columbus, Ohio, which is Ross's headquarters. Now, they are wholly owned subsidiary of Abbott. But we stringently contest that all witnesses and all documents are located in Lake County. To support that, we present the deposition excerpts of the misclause as well as the fact that there was a substantial number of documents that were apparently moved. Other problems making trial easy, expeditious, and inexpensive, defendant didn't really address that issue in their brief, and I don't see the need to do so either. There's one other issue I want to touch on that was raised by       the defendant was charged with misdemeanor assault. And the defendant was charged with misdemeanor assault. And the defendant agreed, stipulated, to allow us to supplement the record. And that was with the deposition excerpts from misclause. Then in their briefing, they argued that it would be impermissible for this court to consider those items. And that's incorrect. I've got two cases to cite to the court that stand for the proposition. When the parties agree and so stipulate, this court can consider evidence that was not in the record or considered by the lower court. Those cases are in the record. So why don't you file a motion to supplement with those and you reply. All right. Thank you, Your Honor. Thank you, Mr. Keller. Ms. Pepe's rebuttal. Thank you, Your Honor. I think Mr. Keller's covered the congestion, but just to be clear, in our brief, I believe on page 28, we have the record cited. It's the 2008 statistics in law cases, $50,000 and over. There was more than a one-year difference proceeding in Lake  to St. Clair. So that clearly favors Lake County along with the other factors. Plaintiffs have conceded that, as Mr. Keller notes. And further, I would emphasize, and I've confirmed, we have not waived our request for a jury on the unjust enrichment portion of the lawsuit. So there is a jury demand still in play. Just briefly before I get to, I think, the final issue before the court, there is clear Illinois case law that the mere fact that a defendant does business in a jurisdiction is relevant for venue purposes. It is not a factor in the formal inquiry. And there is a            is relevant for venue purposes. And there is a clear demand for a jury to do business in a jurisdiction that does not         that does not require a jury to do business in a jurisdiction that does not require a jury to do business   jurisdiction       jury to do business in a jurisdiction that does not require jury to do business in that jurisdiction, what it admitted and found and what it did not. And it's what I said before. All the government investigation involved and all it needed to involve because a federal program fraud claim is very different from an ICFA claim. Federal program fraud does not require the government as the plaintiff to show actual submission of Medicare claims and it does not require any showing of actual economic harm to a beneficiary. It's a very different animal and that's so for a reason. State law claims should be different to avoid preemption and other concerns. So what we have here is the plaintiff saying her only connection to this forum is a government investigation that concerned and only had to concern Abbott's interactions with an imaginary government medical supplier that no one alleges actually submitted a Medicare claim ever much less a claim that proximately caused economic injury to this plaintiff. Yet that is precisely the issue in her case. The primary factual issues in her ICFA case are whether Abbott's conduct somehow caused a third-party medical supplier. Notably they did not name a single one. As defendants they focused solely on the claim that in turn proximately caused economic harm to this plaintiff. There is nothing in the government investigation or the settlement document or the stipulation of facts as noted in pages 8-11 of our briefs that covers that. So a plaintiff has failed the first critical part of the forum test. She has not connected her choice of forum with specificity to the primary factual issues in her case. That brings us to the second part because that's not it. Clearly I think she hasn't done that and then the question is even where a plaintiff has  done that, does the record before the court show that that connection, assuming it is one at all, does the record show that it's outweighed by contacts in another Illinois county that are more predominant and establish a clearer connection to the litigation and a more convenient forum? Would Jackson County be an inconvenient forum in your analysis? We have not addressed that issue, Your Honor. I can't take a position on it for our client. One thing I can say is the plaintiff has never said Lake County would be inconvenient. We put in an affidavit saying St. Clair County would be inconvenient in all of the factors under settled law favoring Lake County and there's no evidence of Jackson. Thank you very much. Thanks to both of you for your briefs and your arguments. We'll take this matter under